**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Raymond Greenwood, et al., ) | No. CV-11-08040-SMM |
| Plaintiffs, ) | **ORDER** |
| v. ) | |
| Mepamsa, SA, et al., ) | |
| Defendants. ) | |

Before the Court are: (1) Defendant XL Insurance Switzerland Ltd.'s ("XL Insurance Switzerland") Motion to Dismiss the First Amended Complaint Based on Improper Venue (Doc. 31); (2) Defendant XL Specialty Insurance Co.'s ("XL Specialty Insurance") Motion to Dismiss the First Amended Complaint for Failure to State a Claim, or in the Alternative, Motion to Dismiss Based on Improper Venue (Doc. 32); (3) Defendant Mepamsa, SA's ("Mepamsa") Motion to Dismiss (Doc. 33); (4) Plaintiffs Raymond Greenwood and Tasha Greenwood's ("Plaintiffs") Cross-Motion for Stay of Claims Against Mepamsa (Doc. 37); and (5) Defendant Mepamsa's Motion for Leave to File Sur-Response to Plaintiffs' Reply in Support of Their Cross-Motion for a Stay of Claims Against Mepamsa (Doc. 46). The matters are all fully briefed. (Doc. 37; Doc. 38; Doc. 39; Doc. 43; Doc. 44; Doc. 45.)[1]

---

[1] Defendants XL Insurance Switzerland and XL Specialty Insurance both requested oral argument in connection with their Motions to Dismiss. (Doc. 31; Doc. 32.) The parties have had the opportunity to submit briefing. Accordingly, the Court finds the pending motion suitable for decision without oral argument and the parties' request is denied. See LRCiv 7.2(f).

**BACKGROUND**

Plaintiffs and their minor children were severely burned on December 10, 2007 by an allegedly defective product, the Olympian Wave 8 Catalytic Safety heater ("the heater"). (Doc. 26 ¶ 31.) On April 9, 2008, Plaintiffs filed suit in Apache County Superior Court of Arizona (the "underlying lawsuit") against the heater's manufacturer, Mepamsa, and its current and former distributors, Camco Manufacturing, Inc. ("Camco") and U.S. Catalytic Corporation ("U.S. Catalytic"), respectively. (Doc. 26 ¶¶ 22, 26, 32.) At the time of Plaintiffs' injuries, XL Insurance Switzerland was allegedly Mepamsa's international liability insurer for products to be sold in the United States. (Doc. 26 ¶¶ 6, 8-9.) Camco and U.S. Catalytic contend that Mepamsa and XL Insurance Switzerland were under a duty to indemnify them for Plaintiffs' claims pursuant to an Insurance Policy (the "Policy") issued by XL Insurance Switzerland to Mepamsa's parent company and a Distributor/Agent Agreement and certificates of insurance furnished by Mepamsa. (Doc. 26 ¶¶ 22-28.)

On March 10, 2011, after Mepamsa, XL Insurance Switzerland, and XL Specialty Insurance allegedly refused to defend them in the underlying lawsuit, Camco and U.S. Catalytic entered into a "Damron" agreement with Plaintiffs. See Damron v. Sledge, 460 P.2d 997 (Ariz. 1969). Through this agreement, Camco and U.S. Catalytic assigned their indemnification claims to Plaintiffs. (Doc. 26 ¶ 1.) The Policy contained a forum selection clause stating that disputes arising from the Policy must be heard in Switzerland. (Doc. 39-1 at 2.) Further, the Distributor/Agent Agreement between Mepamsa and Camco and U.S. Catalytic contained an arbitration provision stating that any disagreement must be submitted for arbitration to the International Chamber of Commerce (the "ICC") in Paris, France. (Doc. 26 ¶ 24.) Plaintiffs have commenced arbitration proceedings. (Doc. 26 ¶ 70.)

On July 13, 2011, Plaintiffs brought suit against XL Insurance Switzerland, its sister company XL Specialty Insurance, and Mepamsa, alleging six counts. (Doc. 26.) In Count I, Plaintiffs seek a declaratory judgment that XL Insurance Switzerland has a duty to indemnify Camco and U.S. Catalytic for costs incurred from the settlement with Plaintiffs. (Doc.26 at 14-16.) Count II alleges breach of contract against XL Insurance Switzerland and XL

Specialty Insurance. (Doc 26 at 16.) Count III alleges breach of covenant of good faith and fair dealing against XL Insurance Switzerland and XL Specialty Insurance. (Doc. 26 at 16-18.) Count IV alleges breach of covenant of good faith and fair dealing against Mepamsa. (Doc. 26 at 19-21.) Count V seeks common law indemnity against Mepamsa. (Doc. 26 at 21.) Count VI seeks statutory indemnity against Mepamsa. (Doc. 26 at 22.)

Several motions are pending in this case. XL Insurance Switzerland and XL Specialty Insurance seek dismissal pursuant to Rule 12(b)(3) on grounds that Switzerland is the exclusive forum for disputes under the Policy. (Doc. 31; Doc. 32.) As an additional ground for dismissal, XL Specialty Insurance contends that it was not a party to any contract in this case and thus that Plaintiffs have failed to state a claim against it. (Doc. 32.) Mepamsa seeks dismissal on grounds that its dispute with Plaintiffs must be resolved in its entirety through arbitration. (Doc. 33.) Plaintiffs seek a stay of their claims against Mepamsa pending the outcome of ongoing arbitration proceedings (Doc. 37) and Mepamsa requests to file a sur-response regarding Plaintiffs' motion for a stay (Doc. 46).

## LEGAL STANDARDS

### I. Forum Selection Clauses

A motion to enforce a forum selection clause is treated as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3). Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996). Under a Rule 12(b)(3) motion, "the pleadings are not accepted as true as would be required under a Rule 12(b)(6) analysis" and the Court may consider facts outside the pleadings. Id. "[I]n the context of a Rule 12(b)(3) motion based upon a forum selection clause, the trial court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party. . . ." Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1138 (9th Cir. 2004). Should the motion under Rule 12(b)(3) be granted, the Court may dismiss, or in the interests of justice, transfer the case to a forum where venue is proper. 28 U.S.C. § 1406(a).

The interpretation and enforcement of forum selection clauses is governed by federal law. Manetti-Farrow, Inc, v. Gucci Am., Inc., 858 F.2d 509, 513 (9th Cir. 1988). A forum

selection clause is "'prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances.'" Pelleport Investors, Inc. v. Budco Quality Theatres, Inc., 741 F.2d 273, 279 (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972)). Invalidating such a clause is difficult. Indeed, "[t]he party challenging the clause bears 'a heavy burden of proof' and must clearly show" that enforcement would be unreasonable and unjust for one of the three reasons the Supreme Court set out in Bremen: "(1) if the inclusion of the clause in the agreement was the product of fraud or overreaching; (2) if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and (3) if enforcement would contravene a strong public policy of the forum in which suit is brought." Murphy v. Schneider Nat'l Inc., 362 F.3d 1133, 1140 (9th Cir. 2004) (quoting Bremen, 407 U.S. at 12-13, 15, 18).

**II.    Arbitration Agreements**

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA"), governs arbitration agreements in both state and federal courts. Specifically, "[a] party aggrieved by the alleged . . . refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." Id. § 4. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (U.S. 1985) (emphasis in original). Therefore, "agreements to arbitrate must be enforced, absent a ground for revocation of the contractual agreement." Id. Further, pursuant to 9 U.S.C. § 3, the Court is required to stay proceedings pending arbitration if the Court finds issues referable to arbitration under a written arbitration agreement. However, the Ninth Circuit has held that the Court has discretion to dismiss specific claims if they are referable to arbitration. See Sparling v. Hoffman Constr. Co., Inc., 864 F.2d 635 (9th Cir. 1988).

/ / /

**DISCUSSION**

**I.     Motion to Dismiss Pursuant to Rule 12(b)(3)**

XL Insurance Switzerland and XL Specialty Insurance seek dismissal pursuant to Rule 12(b)(3) on grounds that the Policy's forum selection clause makes it improper for Plaintiffs to bring suit in this Court. (Doc. 31; Doc. 32.) Plaintiffs request that the Court find that enforcement of the Policy's forum selection clause would be unreasonable or unjust. (Doc. 39 at 5.) First, Plaintiffs contend that neither Camco nor U.S. Catalytic freely bargained for or were even aware of the forum selection clause. (Doc. 39 at 5-6.) Second, Plaintiffs assert that they would effectively be denied their day in Court if the forum selection clause is enforced, as Swiss courts do not include a right to a jury trial or punitive damages and require a deposit of court fees which Plaintiffs could not afford to pay. (Doc. 39 at 9.) Third, Plaintiffs contend that because Swiss law forbids the kind of claims assignment that occurred in this case, enforcement of the forum selection clause would result in both a violation of Arizona public policy and a denial of Plaintiffs' right to their day in court. (Doc. 39 at 8-9.)

The Court finds that Plaintiffs have not met the heavy burden necessary to defeat the forum selection clause. First, the forum selection clause was not a product of fraud or overreaching. See Bremen, 407 U.S. at 10. Rather, Mepamsa willingly entered into the Policy in 2007, and U.S. Catalytic, Camco, and Plaintiffs had enough faith in the Policy to make it a key component of their Damron agreement. Second, although Plaintiffs assert that they would be deprived of their day in court if the forum selection clause is enforced, they fail to provide sufficient evidence of this. See Bremen, 407 U.S. at 10. The Court is unconvinced by Plaintiffs' contentions that the forum selection clause should not be enforced because Swiss law does not provide for jury trials or punitive damages and requires a court deposit. The mere lack of a right to a jury trial or unavailability of punitive damages is insufficient to show that Plaintiffs will be deprived of their day in court, as parties are not entitled to the precise justice system available to them in the United States. See Scherk v. Alberto-Culver Co., 417 U.S. 506, 516 (1974); Yavuz v. 61 MM, Ltd., 576 F.3d 1166, 1177 (10th Cir. 2009) ("Thus, Switzerland is not inadequate just because it may not permit the identical remedies

that [plaintiff's] Oklahoma suit seeks, such as his request for punitive damages or a constructive trust."). A Court should "consider a party's financial ability to litigate in the forum selected by the contract when determining the reasonableness of enforcing a forum selection clause." Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1141-42 (9th Cir. 2003)(citing Spradlin v. Lear Siegler Mgmt. Serv., 926 F.2d 865, 869 (9th Cir. 1991). However, a plaintiff must show substantial evidence of financial hardship. Compare Murphy, 362 F.3d at 1141-42 (remanding where plaintiff provided "sworn assertions" that Murphy had financial inability to litigate in Wisconsin, that a disability would prevent him from driving to Wisconsin, and that even with a driver he could not sit [for more than an hour]); with Spradlin, 926 F.2d at 869 (enforcing a Saudi Arabian forum selection clause where [plaintiff] "has not only failed to provide evidence of inconvenience . . . he has failed even to offer specific allegations as to travel costs . . . or his financial ability to bear such costs and inconvenience"). Here, not only have Plaintiffs provided no specific allegations or affidavits of their income, Plaintiffs have already paid at least $50,000 to arbitrate their case against Mepamsa. (Doc. 45-2 at 16.) Further, it appears that under the Swiss Federal Code of Civil Procedure, if Plaintiffs could not afford to deposit court fees, they would receive relief from those costs. (Doc. 45-1 at 12-13.)

Third, the Court finds unpersuasive Plaintiffs' contention that, because Swiss courts would likely enforce the Policy's prohibition of assignment of claims, the forum selection clause contravenes a strong public policy of Arizona and constitutes a denial of Plaintiffs' day in court. (Doc. 39); see Bremen, 407 U.S. at 10. In support of their position, Plaintiffs cite to A.R.S. § 20-461(A)(7), which reads in pertinent part:

> The property or casualty insurer shall have the rights consistent with the provisions of its insurance policy to receive notice of loss or claim and to all defenses it may have to the loss or claim, but not otherwise to restrict an assignment of a loss or claim after a loss has occurred.

Ariz. Rev. Stat. § 20-461(A)(7). This statute and Arizona case law appear to bar insurers from blocking an insured's claim assignment made after a potential liability-causing event

has occurred. See Damron, 460 P.2d 997; Aetna Cas. & Sur. Co. v. Valley Nat'l Bank of Ariz., 485 P.2d 837 (Ariz. App. 1971).

Although a Swiss court could bar Plaintiffs from proceeding as assignees of Camco and U.S. Catalytic, this potential result does not invalidate the forum selection clause on public policy grounds or deny Plaintiffs their day in court. First, Arizona courts routinely hold that forum selection clauses are presumptively valid and that the party claiming the oppressiveness or unreasonableness needed to invalidate such a clause must meet a heavy burden of proof. See, e.g., Bennett v. Appaloosa Horse Club, 35 P.3d 426, 428, 431 (Ariz. App. 2001). Second, although statutes and cases providing a right to assign claims when parties are denied indemnity by their insurers play an important role in Arizona law, they do not negate the forum selection clause simply because Swiss law may take a different approach. See Scherk v. Alberto-Culver Co., 417 U.S. 506, 517 n.11 (finding that to require that "'American standards of fairness' must . . . govern the controversy demeans the standards of justice elsewhere in the world, and unnecessarily exalts the primacy of United States law over the laws of other countries."). The Policy originated with a Swiss insurer, XL Switzerland Insurance, and Mepamsa, through its Swiss parent corporation the Franke Group, agreeing that disputes under the Policy should be resolved in Switzerland. (Doc. 39 at 2). Even assuming that Camco and U.S. Catalytic have indemnity rights under the Policy that could be assigned to Plaintiffs, it is not repugnant to any public policy to interpret the Policy as it was originally intended. The parties here engaged in international commerce, and as the Supreme Court has stated "[w]e cannot have trade and commerce in world markets and international waters exclusively on our terms, governed by our laws, and resolved in our courts." Bremen, 407 U.S. at 9. Plaintiffs' contention that they would be denied their day in court because they will likely not prevail as a result of the anti-assignment clause is also insufficient. Plaintiffs can assert to the Swiss court that the assignment is valid. It cannot be said that a party has not had its day in court simply because it does not prevail in a lawsuit based on legal or procedural grounds. Accordingly, the Court will dismiss Counts I, II, and

III against XL Insurance and XL Specialty Insurance.[2] See Fed. R. Civ. P. 12(b)(3); Bremen, 407 U.S. at 10.

## II. Cross-Motion to Stay Claims Against Mepamsa

Mepamsa seeks dismissal on grounds that its disputes with Plaintiffs are subject to arbitration before the ICC pursuant to a Distributor/Agent Agreement Mepamsa signed with U.S. Catalytic. (Doc. 26 ¶ 24; Doc. 33 at 1.) The arbitration provision reads:

> This contract will be of a commercial nature and will be governed by its own clauses, or in its defect of interpretation, by the international uses for distribution agreements. Any dispute arising from the interpretation or execution of the present contract will be submitted to arbitration by the International Chamber of Commerce in Paris, France. The arbitrators should not be of [A]merican or [S]panish nationality.

(Doc. 26 ¶ 24.) Here, arbitration is ongoing, and Mepamsa contends that the proceedings encompass identical allegations regarding Mepamsa's alleged liability for bad faith, common law indemnity, and statutory indemnity. (Doc. 33 at 6.)

In response, Plaintiffs filed a Cross-motion for Stay of Claims Against Mepamsa on grounds that a stay is mandatory under the FAA because all of their claims in this lawsuit may not be resolved at arbitration. (Doc. 37 at 5, 8.) Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

---

[2]As the Court will dismiss XL Specialty Insurance based on enforcement of the forum selection clause, the Court need not make a finding on XL Specialty Insurance's argument for failure to state a claim based on its purported lack of involvement with the Policy. See Holland Am. Line, Inc., v. Wartsila N. Am., Inc., 485 F.3d 450, 456 (9th Cir. 2007) (A forum selection clause is enforceable against nonparties where "the alleged conduct of the nonparties is closely related to the contractual relationship."); Manetti-Farrow, 858 F.2d at 514 n.5 (9th Cir. 1988) (finding that a "range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses.")

9 U.S.C. § 3. Plaintiffs rely on the Third Circuit's interpretation of this language as mandating a stay pending arbitration upon request of a party. Lloyd v. Hovensa, 369 F.3d 263, 269 (3d Cir. 2004). However, the Ninth Circuit has read this language as discretionary, rather than mandatory, under 9 U.S.C. § 3, as to any claim referable to arbitration. See, e.g., Sparling, 864 F.2d 635 (district courts have discretion to dismiss claims in favor of arbitration under 9 U.S.C. § 3); Meritage Homes Corp. v. Hancock, 522 F.Supp.2d 1203, 1211 (D. Ariz. 2007) ("The Court also has discretion to dismiss, rather than stay, litigation as to any claim referable to arbitration.").

Here, it is not completely clear whether all of Plaintiffs' claims will be deemed referable to arbitration by the ICC. Specifically, it is unclear whether the ICC can and will address Plaintiffs' common law and statutory indemnity claims. Plaintiffs have made an appropriate request for a stay under § 3 of the FAA, and the Court does not see how such a stay would prejudice Mepamsa. Therefore, the Court will grant a stay of Mepamsa's Motion to Dismiss while the parties resolve all matters that the ICC deems arbitrable under the arbitration provision.[3]

**CONCLUSION**

**IT IS HEREBY ORDERED GRANTING** XL Insurance Switzerland Ltd.'s Motion to Dismiss (Doc. 31).

**IT IS FURTHER ORDERED GRANTING** XL Specialty Insurance Company's Motion to Dismiss (Doc. 32).

**IT IS FURTHER ORDERED DENYING** Mepamsa, SA's Motion to Dismiss (Doc. 33) without prejudice to refile upon the conclusion of arbitration proceedings between Mepamsa and Plaintiffs.

---

[3]The Court has also reviewed Mepamsa's Sur-Response to Plaintiffs' Cross-Motion for a Stay of Claims Against Mepamsa (Doc. 46-1.) Mepamsa's Sur-Response asserts that it has not separately challenged the jurisdiction of the ICC, as Plaintiffs contend. Although the Court will grant Mepamsa's Motion for Leave to File Sur-Response to Plaintiffs' Reply in Support of Their Cross-Motion for a Stay of Claims Against Mepamsa (Doc. 46), the Sur-Response was not integral to the Court's decision on Plaintiffs' request for a stay.

**IT IS FURTHER ORDERED GRANTING** Plaintiffs' Raymond Greenwood and Tasha Greenwood's Cross-Motion for Stay of Claims Against Mepamsa (Doc. 37).

**IT IS FURTHER ORDERED GRANTING** Mepamsa's Motion for Leave to File Sur-Response to Plaintiffs' Reply in Support of Their Cross-Motion for a Stay of Claims Against Mepamsa (Doc. 46).

DATED this 11th day of October, 2011.

_____
Stephen M. McNamee
United States District Judge